UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SPECIALTYCARE INC., REMOTE
NEUROMONITORING PHYSICIANS, PC
and SENTIENT PHYSICIANS, PC,

        Plaintiffs,

        v.

HEALTH CARE SERVICE CORPORATION
d/b/a BLUE CROSS BLUE SHIELD OF
ILLINOIS,

        Defendant.

No. 25 CV 12935

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiffs SpecialtyCare Inc., Remote Neuromonitoring Physicians, and Sentient Physicians sued defendant Health Care Service Corporation d/b/a Blue Cross Blue Shield of Illinois for its failure to pay SpecialtyCare money it was ordered to pay after an independent dispute resolution process pursuant to the No Surprises Act. Defendants move to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons discussed below, the motion is granted.

## I.    Legal Standards

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 12(b)(1) governs dismissals based on a lack of subject-matter jurisdiction. A complaint must contain "a short and plain statement of the grounds for the court's jurisdiction." Fed. R. Civ. P. 8(a)(1). The plaintiff bears the burden of establishing jurisdiction. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678; *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

## II.    Background

Congress passed the No Surprises Act to protect patients from surprise medical bills when receiving care from out-of-network healthcare providers. *See* 42 U.S.C. § 300gg-111, et seq. Under the Act, health plans and issuers, like Blue Cross Blue Shield of Illinois, are required to provide coverage for participants and beneficiaries and reimburse providers directly for out-of-network services. 42 U.S.C. § 300gg-111; [33] ¶ 15.[1] The Act sets up an independent dispute resolution process for billing disputes between providers and insurers. 42 U.S.C. § 300gg-111(c). First, the healthcare provider and insurer must try to agree on a price for the services. 42 U.S.C.

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' amended complaint, [33].

2

§ 300gg-111(c)(1)(A). If the parties cannot come to an agreement, either party may initiate independent dispute resolution proceedings. 42 U.S.C. § 300gg-111(c)(1)(B). A certified independent dispute resolution entity is selected by either the parties or the Department of Health and Human Services and the entity determines the amount the insurer owes the provider by choosing between offers submitted by the parties. 42 U.S.C. § 300gg-111(c)(4)–(5). The certified independent dispute resolution entity's award is binding on the parties, and payment of the award "shall be made … not later than 30 days after the date on which such determination is made." 42 U.S.C. § 300gg-111(c)(5)(E)(i).

Plaintiffs allege that a certified independent dispute resolution entity ordered Blue Cross Blue Shield of Illinois to pay plaintiffs for services rendered. [33] ¶¶ 6, 21. They allege that Blue Cross Blue Shield of Illinois has failed to pay and owes $274,434 in unpaid past due amounts. [33] ¶¶ 6, 22. These payments, plaintiffs say, are well past the thirty-day payment window set in the No Surprises Act. [33] ¶ 23.

## III. Analysis

### A. Employee Retirement Income Security Act

Plaintiffs bring a claim under ERISA, alleging that Blue Cross Blue Shield of Illinois improperly denied benefits, including the right to payment, to plaintiffs. [33] ¶¶ 52–60. Blue Cross Blue Shield of Illinois moves to dismiss the claim for lack of subject-matter jurisdiction, arguing that plaintiffs lack "statutory standing." Plaintiffs allege that they are beneficiaries under ERISA and are the "real part[ies] in interest as to these claims," and so have standing. [33] ¶ 53.

The issue in this suit is not one of jurisdictional standing, but "whether [plaintiffs'] claim comes within the zone of interests regulated by a specific statue." *Penn. Chiropractic Ass'n v. Independence Hosp. Indem. Plan, Inc.*, 802 F.3d 926, 928 (7th Cir. 2015). I "avoid the language of standing and ask instead whether plaintiffs are participants or beneficiaries as ERISA uses those words." *Id.* Because the issue is whether plaintiffs can state a claim under the ERISA statute, it is analyzed under Rule 12(b)(6), not Rule 12(b)(1).

"A civil action may be brought by a participant or beneficiary [of an ERISA plan] to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiffs are not participants in the plans. *See* 29 U.S.C. § 1002(7) (participant is an employee or former employee who seeks a plan's benefits). Instead, they say they are beneficiaries. A beneficiary is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

"When a 'participant' assigns to a medical provider the right to receive the participant's entitlement under the plan, this makes the provider a 'beneficiary'" under ERISA. *See Penn. Chiropractic Ass'n*, 802 F.3d at 928. "[A]n assignment puts the assignee into the shoes of the assignor." *Milam v. Selene Fin., LP*, 163 F.4th 416, 420 (7th Cir. 2025). An assignee cannot have greater rights than the assignor possessed and can only assert claims that could be brought by the assignor

4

themselves. *Decatur Mem'l Hosp. v. Conn. Gen. Life Ins. Co.*, 990 F.2d 925, 927 (7th Cir. 1993).

Plaintiffs were assigned participants' plan entitlements and so are "beneficiaries" of the Blue Cross Blue Shield of Illinois plans through assignment. [33] ¶ 53. This includes any entitlement to payment for healthcare services. *See Griffin v. TeamCare*, 909 F.3d 842, 845–46 (7th Cir. 2018). But plaintiffs do not allege that payment was denied, rather, they allege that they were underpaid for their services. [33] ¶¶ 6, 16, 18, 22, 27. There is a difference between a claim that implicates the *rate* of payment, and one that implicates the *right* to payment. *See DB Healthcare, LLC v. Blue Cross Blue Shield of Ariz., Inc.*, 852 F.3d 868, 877–78 (9th Cir. 2017) (claim relating to process of post-payment claims review and practice of recouping erroneous payments are not within the scope of assignment); *Brown v. BlueCross BlueShield of Tennessee, Inc.*, 827 F.3d 543, 548–49 (6th Cir. 2016) (recoupment of payments governed by separate contract between provider and insurer, not the employee benefits agreements, and so outside the scope of assignment); *Lone Star OB/GYN Assocs. v. Aetna Health Inc.*, 579 F.3d 525, 530–31 (5th Cir. 2009) (claims for underpayment were "entirely separate from coverage and arise out of the independent legal duty contained in the contract"). The "right to payment" falls within ERISA's "zone of interests" because an outright denial of payment is a denial of benefits, but the "rate of payment" does not, because the rate depends on terms outside the plans themselves (here, the independent dispute resolution process). *Brown*, 827 F.3d at 548. The Blue Cross Blue Shield of Illinois plan participants were

not parties to the independent dispute resolution process, so they could not bring a suit for underpayment. *Id.* at 549. Because the participants could not bring a suit, the dispute about underpayment "cannot be covered by those members' assignment of benefits." *Id.* "While the ultimate effect on [plaintiffs] may be the same (i.e., non-payment), [plaintiffs'] grievance with Blue Cross is uniquely its own; it is not derivative of [plaintiffs'] patients." *Id.*

That the plaintiffs' claim falls outside the "zone of interests" regulated by ERISA is "further bolstered by the fact that the patient-assignors are unaffected by the outcome of this litigation." *Id.* The plan's participants cannot be billed by the providers to make up for any shortfall. *See* 42 U.S.C. § 300gg-111(a)(1), (b). Because the participants received "all the 'benefits due to [them] under the terms of [the] plan," *DaVita Inc. v. Amy's Kitchen, Inc.*, 981 F.3d 664, 678–79 (9th Cir. 2020), plaintiffs fail to state a claim for improper denial of benefits under ERISA.

## B.   Section 9 of the Federal Arbitration Act

Plaintiffs say that I can confirm the independent dispute resolution award through Section 9 of the Federal Arbitration Act. Defendants counter that Congress did not incorporate the section into the No Surprises Act, and so it does not apply to the independent dispute resolution award.

FAA Section 9 says that if the parties "in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration," a party to an arbitration may apply to the court to confirm the award, which it must do unless the award is vacated, modified, or corrected as laid out in

6

sections 10 and 11 of the Act. 9 U.S.C. § 9. Section 10 allows a district court to vacate an award if (1) the award was "procured by corruption, fraud, or undue means"; (2) there was "evident partiality or corruption in the arbitrators"; (3) the arbitrators were guilty of misconduct because they refused to postpone a hearing when there was sufficient cause shown, refused to hear pertinent and material evidence, or misbehaved in a way to prejudice the rights of any party; or (4) the arbitrators exceeded their powers or improperly executed them so that a "mutual, final, and definite award" was not made. 9 U.S.C. § 10(a).

Plaintiffs do not argue that the parties had an arbitration agreement; instead, they say that Section 9 does not require one. But the plain language of Section 9 of the FAA requires an "agreement" between the parties that "a judgment of the court shall be entered upon the award made pursuant to [] arbitration." 9 U.S.C. § 9. "[T]he clear plain language and ordinary meaning of a text controls unless it leads to absurd results contrary to the obvious intent of the drafters." *United States ex. rel. Streck v. Eli Lilly & Co.*, 152 F.4th 816, 834 (7th Cir. 2025). The text of the statute requires an agreement.

And arbitration "is a matter of contract." *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019). Indeed, it is "strictly 'a matter of consent,' … and thus 'is a way to resolve those disputes—*but only those disputes*— that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal citations omitted) (emphasis in original). The independent dispute resolution process was not the result of an

arbitration agreement, but pursuant to a statute authorizing the process. 42 U.S.C. § 300gg-111(c)(1)(B). It would not lead to absurd results contrary to the intent of the drafters if Section 9 of the FAA did not apply to a statutorily required process.

Plaintiffs argue that an agreement is not necessary for Section 9 to apply. But in each of their cited cases, there was an arbitration agreement. *See Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 587 n.6 (2008) (discussing the specific language in the agreement and whether specific standards must exist in the agreement to judicially enforce the arbitration award); *Qorvis Comm'ns, LLC v. Wilson*, 549 F.3d 303, 305–06, 308 (4th Cir. 2008) (arbitration clause in employment agreement); *Booth v. Hume Publ'g*, 902 F.2d 925, 930 (11th Cir. 1990) (employment agreement with provision that arbitrator's determination would be final and binding); *George Watts & Son, Inc. v. Tiffany & Co.*, 248 F.3d 577, 579–80 (7th Cir. 2001) ("But Watts does not contend that the arbitrator violated the arbitration agreement in such a fashion."). Plaintiffs offer no other authority to support their argument that they do not need an agreement to arbitrate for Section 9 to apply.

That the No Surprises Act references 9 U.S.C. § 10(a) does not mean it also incorporated § 9. The Act does not incorporate § 10(a) entirely and instead cross-references four circumstances where a federal court can vacate an arbitration award. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II); 9 U.S.C. § 10(a)(1)–(4). The statute does not reference 9 U.S.C. § 9 in any way. "It is a fundamental principle of statutory interpretation that absent provision[s] cannot be supplied by the courts." *Rotkiske v.*

8

*Klemm*, 589 U.S. 8, 14 (2019) (internal quotation marks and citation omitted). I decline to read an unreferenced provision into the No Surprises Act.

Because there was no arbitration agreement, Section 9 of the FAA does not apply, and Count 1 must be dismissed.

### C.     Private Cause of Action under the No Surprises Act

Plaintiffs also allege violations of the No Surprises Act, asserting that there is an implied cause of action under the Act.

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). There are two types of private rights of action: express and implied. *Chi. Tchrs. Union, Loc. 1 v. Educators for Excellence, Inc.*, 159 F.4th 524, 528 (7th Cir. 2025). An express right of action is in a statute's text; an implied right of action is "judicially inferred." *Id.* To find an implied right of action, "[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Sandoval*, 532 U.S. at 286. There is a "strong presumption" against the creation of an implied right of action. *Chi. Tchrs. Union*, 159 F.4th at 530. Without congressional intent to create a cause of action, "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286–87.

There is no express right of action in the No Surprises Act. And beyond its silence, the Act bars judicial review of a determination of a certified independent dispute resolution entity except in a case described in paragraphs (1) through (4) of

9

Section 10(a) of the FAA. 42 U.S.C. § 300gg-111(c)(5)(E). Section 10, in turn, allows a court to vacate an arbitration award for corruption, fraud, partiality, misconduct, or if the arbitrators exceeded their power. 9 U.S.C. § 10(a)(1)–(4); *see* Section III.B. at 7. On its face, the No Surprises Act bars judicial review except in a few limited circumstances, none of which are relevant here. I do not have authority to review the independent dispute resolution entity's determination.

Plaintiffs argue that implying a private right to seek confirmation or enforcement of an award is not "judicial review." I disagree. The Supreme Court has explained that the "Federal Arbitration Act … provides for expedited judicial review to *confirm*, vacate, or modify arbitration awards." *Hall St. Assocs.*, 552 U.S. at 578 (emphasis added); *see also Concrete Pipe & Prods. of Cali., Inc. v. Constr. Laborers Pension Tr. for S. Cali.*, 508 U.S. 602, 611 (1993) ("The statute provides for judicial review of the arbitrator's decision by an action in the district court to enforce, vacate, or modify the award."). Because confirmation of an arbitrator's award is included in judicial review, I am barred from confirming any independent dispute resolution award.

Even if confirmation of an independent dispute resolution award is not judicial review, the statute's language does not reflect Congress's intent to create a private remedy necessary to find an implied cause of action. Under the No Surprises Act, independent dispute resolution determinations "shall be binding upon the parties involved." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). The Act also says that payment "shall be made … not later than 30 days after the date on which such determination is

10

made." 42 U.S.C. § 300gg-111(c)(6). Payment "shall be made directly to the nonparticipating provider or facility." 42 U.S.C. § 300gg-111(c)(6)

The No Surprises Act confers a right for providers to payment. The Act says that payment "shall" be made to providers, which is "rights-creating" language suggesting an implied right of action. *See Me. Cmty. Health Options v. United States*, 590 U.S. 296, 324 (2020). But "Congress's use of mandatory language alone is not enough to create an implied private right of action." *Saloojas, Inc. v. Aetna Health of Cali., Inc.*, 80 F.4th 1011, 1015 (9th Cir. 2023). Congress must intend to create a private remedy. *Sandoval*, 532 U.S. at 286. "Most revealing of Congress's intent is that [the No Surprises Act] already has a method of enforcement: [42 U.S.C. § 300gg-22(b)(2)]." *Chi. Tchrs. Union*, 159 F.4th at 530. When Congress creates an enforcement mechanism other than a private right of action, it "suggests that Congress intended to preclude others." *Id.* (quoting *Sandoval*, 532 U.S. at 290).

Congress empowered the Department of Health and Human Services to assess penalties against insurers for failure to comply with the No Surprises Act. *See* 42 U.S.C. § 300gg-22(b)(2); 45 C.F.R. § 150.303. Under the enforcement provision, any health plan or health insurance issuer that fails to comply with an independent dispute resolution determination is liable for up to $100 for each day of noncompliance. 42 U.S.C. § 300gg-22(b)(2)(C)(i). The regulations implementing the statute also describe the processes for investigating potential violations and assessing civil money penalties for failing to comply with the No Surprises Act. 45 C.F.R. §§ 150.303–150.345. That Congress created an enforcement mechanism for the

11

Department of Health and Human Services is the "most revealing" clue about Congress's intent and suggests that Congress did not intend to create a private remedy for providers.

Plaintiffs cite to *Me. Cmty. Health Options* in support of their position. That case involved obligations by the government to pay for goods and services, and whether that obligation fell within the Tucker Act's immunity waiver, allowing the petitioners to sue the government for unpaid obligations. *Id.* at 307–08, 322. The Tucker Act waives the United States's immunity for certain damages suits in the Court of Federal Claims. *Id.* at 322. The court held that the "shall pay" language in the statute created an obligation for the government to pay. *Id.* at 314. This language in the Tucker Act context, "often reflects congressional intent to create both a right and remedy." *Id.* at 324 (internal quotation marks omitted). The Court also reasoned that there was a right of action because the statute focused on "compensating insurers for past conduct" and because there was no separate remedial scheme to enforce the statute. *Id.* at 325–26.

*Maine Community*, while supportive in some ways of plaintiff's claim, is not controlling. The Court said that the mandatory language "*often*" reflects an intent to create a right and remedy, but not always. And the No Surprises Act's focus is on protecting *patients* from surprise medical bills. *Guardian Flight, L.L.C. v. Health Care Serv. Corp.*, 140 F.4th 271, 273 (5th Cir. 2025). The Court in *Maine Community* also explained that there was no other enforcement mechanism in the statute, despite the mandatory language. The No Surprises Act has a separate remedial scheme,

which is the "most revealing" factor in determining Congress's intent. Although the language in the Act is mandatory, which can reflect Congress's intent in some circumstances, here, where there is an administrative enforcement mechanism and a focus on patients, not providers, there is no clear intent to create an implied cause of action. Because there is no implied cause of action to bring claims for violations of the No Surprises Act, Counts 3 and 4 are dismissed.

### D.     State-Law Claims

Plaintiffs bring state-law claims for open account, bad faith, unjust enrichment, and violations of the Illinois statute requiring compliance with the No Surprises Act. There is no independent basis for federal jurisdiction, because there are no federal claims remaining and there is no complete diversity between the parties. 28 U.S.C. § 1332; *Jimenez v. Kiefer*, 100 F.4th 931, 936 (7th Cir. 2024); [33] ¶¶ 8–9.[2] I decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). Plaintiffs' state-law claims are dismissed.

---

[2] Both plaintiff Sentient Physicians, PC and defendant Blue Cross Blue Shield of Illinois are citizens of Illinois.

## IV.    Conclusion

Defendant's motion to dismiss, [36], is granted. The federal claims are dismissed with prejudice and the state-law claims are dismissed without prejudice.[3] Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: June 2, 2026

---

[3] Plaintiffs are "generally entitled to at least one chance to amend their complaint to cure an error in response to a district court's dismissal order unless amendment would be futile." *Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 671–72 (7th Cir. 2023) (internal quotation marks and citation omitted). Because underpayment is not within the zone of interests regulated by ERISA, Section 9 of the FAA does not apply, and the No Surprises Act does not confer a private cause of action, any amendment to these counts would be futile.

14